IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 07-00395-01-CR-W-HFS |
| William H. White, | ) | |
| | ) | |
| Defendant. | ) | |

## Report and Recommendation

Pending before the Court is the MOTION TO SUPPRESS, DISMISS FOR FRAUD AND INJUNCTION TO CEASE AND DESIST filed June 18, 2008 (Doc. #24) by *pro se* defendant William H. White ("White").[1] Having considered the briefing from both parties, for the reasons set out herein, the Court recommends that the motion to dismiss be denied.[2]

---

[1] Citing to *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96 (1972), White asserts that, in light of his *pro se* status, the Court should look to the substance of his pending motion rather than the form. White is correct. However, this standard does not relieve a *pro se* party of his obligations under the Federal Rules of Criminal Procedure and, although this Court will liberally construe White's *pro se* pleadings, it cannot and will not act as his advocate. *Compare Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir.1983) ("Although *pro se* pleadings are to be construed liberally, *pro se* litigants are not excused from compliance with relevant rules of the procedural and substantive law.").

[2] Neither party requested an evidentiary hearing. Moreover, the Court concludes that a hearing on White's motion to suppress is unnecessary inasmuch as – to the extent that issues have been raised in a sufficiently definite, specific, detailed, and nonconjectural manner – it can be determined without a hearing that suppression is improper as a matter of law. *See*, *e.g*, *United States v. Hernandez*, 103 Fed. Appx. 917, 918 (8th Cir. 2004); *United States v. Losing*, 539 F.2d 1174, 1177-78 (8th Cir. 1976).

The Indictment against White arises out of two interactions he had with law enforcement officers wherein White was stopped for alleged traffic violations (an invalid license plate and a malfunctioning tail light). On both occasions, White claimed diplomatic immunity and produced identification documents bearing United States government seals. On December 4, 2007, a grand jury indicted White of two counts of wrongfully using a government seal in violation of 18 U.S.C. § 1017.

In his pleadings before the Court, White raises several different issues. Liberally construed, White's pleadings generally assert:

(1) White was and is entitled to diplomatic immunity,

(2) the May 16, 2005 stop of his vehicle was illegal because his license plates were valid,

(3) the Indictment is "vague and unclear,"

(4) the Indictment "makes assumptions not in evidence, predicated on opinionization, and hearsay, unsupported by evidence or fact in law,"

(5) the Indictment "prejudicially assumes guilt of fraud and intent, without facts and evidence,"

(6) the names "William H. White," "William Howard White," and "William H. White II" have been copyrighted and this federal prosecution infringes the copyrights,

(7) any prosecution of White would not be fair because government officials cannot be prosecuted for perjury,

(8) the Indictment should be dismissed because the grand jury did not meet with Constitutional requirements,

(9) the Indictment should be dismissed because the United States lacks personal jurisdiction over White,

2

> (10) the Indictment should be dismissed because unnamed court officials have "refused to honor the Constitution, Treaties, and Law of the United States of America as bound by oath,"
>
> (11) injunctive relief should be issued by the Court in various respects.

The Court will briefly address White's contentions.

### A. Diplomatic immunity

The overriding theme of White's pleadings with the Court is his assertion that he was and is entitled to diplomatic immunity from arrest and prosecution by the United States. According to White, he is a member of the American Indian tribe known as the Pembina Nation Little Shell Band of North America ("the Pembina Nation"). Moreover, White asserts that in August of 2006, he was appointed as an Ambassador at Large for the Pembina Nation. As such, White contends that he is afforded the protection of diplomatic immunity under United States law.

The Vienna Convention was opened for signature in 1961 and was signed by the President of the United States in 1972. The Vienna Convention subsequently was expressly incorporated by Congress into the Diplomatic Relations Act of 1978, 22 U.S.C. §§ 251-59. By its express terms, the Vienna Convention provides absolute immunity from criminal prosecution for diplomats and those household family members who are not nationals of the proposed prosecuting state. Vienna Diplomatic Convention, art. 31(1), 37(1); *see also Mukaddam v. Permanent Mission of Saudi Arabia to United Nations*, 111 F. Supp. 2d 457, 468 (S.D. N.Y. 2000).

3

> Generally an individual must be accredited by the State
> Department as a diplomatic official in order to be entitled to full
> diplomatic immunity. . . . A foreign government cannot
> unilaterally establish diplomatic immunity; the State Department's
> assessment of the individual's functions, not assertions of the guest
> nation, are generally determinative.

VED P. NANDA, DAVID K. PANSIUS, LITIGATION OF INTERNATIONAL DISPUTES IN U.S. COURTS [THE VIENNA DIPLOMATIC CONVENTION], § 4:4 (2008)

As the Supreme Court has often noted, it is true that "Indian tribes occupy a unique status under our law," and "retain some of the inherent powers of the self-governing political communities that were formed long before Europeans first settled in North America." *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 851 (1985). Contrary to White's assertion, however, Indian tribes and their members are not covered by the foreign diplomatic immunity provisions adopted into United States law. *Richmond v. Wampanoag Tribal Court Cases*, 431F.Supp.2d 1159, 1177 (D. Utah 2006).[3] *See also Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1169 (10th Cir.1992) (noting that "the Supreme Court has explicitly stated that Indian tribes are not foreign sovereigns, but are 'domestic dependent nations.'").

### B. The validity of White's Pembina Nation license plates

White argues that his first traffic stop was illegal because: (1) his Pembina Nation license plate was not illegal, or (2) even if it was an improper license plate, "a perceived illegal license plate is not probable cause" to justify a traffic stop. White is in error on both points.

---

[3] Moreover, the Pembina Nation is not a signatory to the Vienna Convention.

4

With regard to the first contention, a somewhat similar argument was made in *Neal v. Arizona*, 2007 WL 2702002 (D. Ariz. Sept. 14, 2007). In *Neal*, an automobile driver was issued traffic tickets by a local police officer. In response, the driver filed an action in federal court asserting that he was a member of the Pembina Nation and "seek[ing] to enjoin the state from enforcing its motor vehicle licensing, registration and titling requirements against him." *Id.*, op. at *1. The driver argued that:

> the state should extend reciprocity privileges to vehicle registrations and driver's licenses issued by the Pembina Nation since "it stands without question . . . that the Pembina Nation Little Shell Tribe exists and is recognized as having the full respect required in any government-to-government relationship. . . ." [The driver alleged] that he has a valid driver's license issued under the Pembina Nation Transportation Code ("PNTC"), but the state refuse[d] to recognize the legitimacy of his license or the PNTC.

*Id.* In rejecting the driver's lawsuit the Court noted that "the Pembina Nation is not federally recognized." *Id.*, op. at *2. *See also Delorme v. United States*, 354 F.3d 810, 814 (8th Cir.2004) (stating that the Little Shell Pembina Band of North America is a federally unrecognized band located in North Dakota). As more fully explained by the court in an early ruling:

> [T]he Bureau of Indian Affairs does not recognize the Pembina Nation as an entity eligible to receive services. Without federal recognition, a tribe has no legal relationship with the federal government and lacks the federally sanctioned authority to function legally and politically. Although the Court does not doubt the existence of the Pembina Nation, [the driver] has provided no evidence to show that the Pembina Nation is a self-governing entity with an established motor vehicle licensing and registration system. . . . Therefore, without any evidence that the Pembina Nation is vested with the authority to function as a sovereign entity and that it has, in fact, established a motor vehicle licensing and registration system, the Court will [rule against the driver].

*Neal v. Arizona*, 2007 WL 1876379, op. at *3 (Jun. 27, 2007).

5

Likewise in this case, there is no argument by White to establish that the Pembina Nation is a federally recognized tribe by the United States government.[4] As the court noted in *Richmond*:

> Federal recognition "involves more than past existence as a tribe and its historical recognition as such. There must be a currently existing group distinct and functioning as a group in certain respects and recognition of such activity must have been shown by specific actions of" the Bureau of Indian Affairs, the Interior Department, or the Congress.

*Richmond*, 431 F.Supp.2d at 1168-69. The unanimous authority of the federal court has found that the Pembina Nation is not a federally recognized tribe. *See*, *e.g.*, *Reed v. U.S. Bank National Associates*, 212 Fed. Appx. 707, 708 (9th Cir. 2007); *Mulder v. Lundberg*, 154 Fed. Appx. 52, 55 (10th Cir. 2006) . *See also* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 65 Fed. Reg. 13,298 (Mar. 13, 2000). As such, the Pembina Nation has no recognized authority to issue license plates for motor vehicles traveling in the state of Missouri. Contrary to White's assertion, police have authority to stop a vehicle

---

[4] White does refer the Court to an 1863 treaty between the United States and the Pembina Nation. 13 Stat. 667 (Oct. 2, 1863). The treaty is unavailing to White. As explained by another court:

> The defendant bases his argument on an 1863 Treaty entered between the Pembina Tribe and the United States. . . . The Treaty says nothing about the ability of tribal members to cross the borders of the United States freely and without compliance with United States law. Article 4 of the Treaty does state that members of the Tribe "shall not be held liable to punishment for past offences," but nothing in the Treaty suggests that tribal members are immune from liability for post-Treaty crimes committed off the reservation.

*United States v. Stowbunenko-Saitschenko*, 2007 WL 865392, op. at *2 (D. Ariz. Mar. 20, 2007).

when there is probable cause to believe that a traffic violation has occurred.  *See*, *e.g.*, *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996).   Inasmuch as White's  vehicle was being operated without valid license plates, law enforcement officers were justified in initiating a traffic stop.  Based on the articulable arguments raised by White, the Court does not find any constitutional violation occurred with the stops of White's vehicle.  To that end, the Court would note that White makes no coherent argument that the stops and subsequent searches and seizures were in any other manner unconstitutional.  Accordingly, the Court will not recommend suppression of any of the evidence obtained as a result of the two traffic stops of White.

### C.  The adequacy of the Indictment

White attacks the underlying Indictment in several respects, asserting that the Indictment is "vague and unclear," "makes assumptions not in evidence, predicated on opinionization, and hearsay, unsupported by evidence or fact in law," and "prejudicially assumes guilt of fraud and intent, without facts and evidence."  White's contentions are groundless.

It is well settled that an indictment is sufficient when it contains all of the essential elements of the offense charged, advises the defendant of the elements of the offense, apprises him of the charges, and allows him to plead a conviction or acquittal as an impediment to subsequent prosecutions.  *United States v. Hernandez*, 299 F.3d 984, 992 (8th Cir. 2002).  It is generally sufficient that the indictment sets forth the offense in the words of the statute itself, so long as those words fully, directly, and expressly, without uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.  *Hamling v. United States*, 418 U.S. at 117; *United States v. McKnight*, 799 F.2d 443, 445 (8th Cir. 1986); *United States v. Opsta*, 659 F.2d 848, 850 (8th Cir. 1981).  However, the indictment does not necessarily

7

have to follow the exact wording of the statute. *United States v. Ivers*, 512 F. 2d at 123. Although the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense," FED. R. CRIM. P. 7(c)(1), it "need not be perfect, and common sense and reason prevail over technicalities." *United States v. Allen*, 357 F.3d 745, 749 (8th Cir. 2004). Without reciting the language of the instant indictment herein, the Court has read and reviewed the instant indictment and finds that it sufficiently meets all the legal criteria set forth in the above-cited case law.[5]

### D. The copyright defense

White additionally argues that his name (and certain derivatives of his name) has been copyrighted and thus he is somehow immune from prosecution. A closer reading of White's arguments and his supporting documentation seems to establish that White had filed security agreements under the Uniform Commercial Code purporting to assert a "common-law copyright of trade-name/trade-mark WILLIAM HOWARD WHITE II©™, WILLIAM HOWARD WHITE©™, WILLIAM H. WHITE©™ and/or any and all derivatives and variations in the spelling." Regardless of whether or not this security agreement actually effectuates any recognizable copyright, it is abundantly clear that it provides no protection from criminal prosecution.

> In his motion to dismiss for lack of jurisdiction, the defendant
> claims that he has a perfected security interest in himself as
> described above, thus preventing the government or the court,
> pursuant to certain provisions of the Uniform Commercial Code,

---

[5] With regard to White's remaining allegations regarding the language in the Indictment, it appears that White is challenging the sufficiency of the United States' evidence against him. Such a challenge must await trial. FED. R. CRIM. P. 29(a). The Court will not weigh the Government's evidence pretrial.

8

> from obtaining jurisdiction over him for the purpose of sentencing
> or for any other purpose. The Uniform Commercial Code,
> however, simply has no bearing upon this court's jurisdiction with
> regard to these criminal proceedings.

*United States v. Cousins*, 2007 WL 2344984, op. at. *2 (W.D. Va. Aug. 14, 2007). *See also United States v. Mitchell*, 405 F.Supp.2d 602, 604 (D.Md. 2005) ("the U.C.C. has no bearing on criminal subject matter jurisdiction"); *United States v. Woodruff*, 2007 WL 2123735, op. at *1 (N.D. Cal. 2007) ("The Uniform Commercial Code [ ] pertains to commercial transactions governed by state law and has no bearing on defendant's federal court sentence for a criminal act."); *Van Hazel v. Luoma*, 2005 WL 2837356, op. at *2 (E.D. Mich. 2005) (noting that a defendant cannot "divest the State . . . of jurisdiction to prosecute him of a criminal offense simply by declaring a security interest in himself pursuant to the Uniform Commercial Code or having another person do so").

### E. The susceptibility of government officials to perjury charges

White next argues that he cannot be guaranteed a fair trial due to the fact that "government officials cannot be prosecuted for perjury." White is grossly mistaken. Government officials – even highly placed government officials – are legally bound by the oaths requiring truthful testimony. *See*, *e.g.*, *United States v. Libby*, 498 F.Supp.2d 1, 2 (D.D.C. 2007) (former Chief of Staff to Vice-President Dick Cheney convicted of four counts of obstruction of justice, perjury, and making false statements to federal investigators).[6]

---

[6] The sole legal authority cited by White – *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108 (1983) – is inapposite. *Briscoe* involved a civil rights action by prisoners seeking to bring an action for civil damages based on perjured testimony given by officers at an earlier trial. The Court found that such a claim for <u>civil</u> damages was not authorized by the Civil Rights Act of 1871, but the *Briscoe* opinion, in no way, impacts the potential for <u>criminal</u> perjury charges to be pursued against any individual providing false testimony at trial.

9

### F. The grand jury proceedings were proper

White next contends that the Indictment should be dismissed because the grand jury did not meet Constitutional requirements. More specifically, White alleges that:

(1) he has not been provided with a grand jury transcript,

(2) there is no proof that the grand jury was composed of his "peers" (*i.e.*, members of the Pembina Nation);

(3) he has not received a clear statement of the nature of the charges against him,

(4) he has not received any explicit and clear statement of the nature of the cause for each Count of the Indictment,

(5) he does not have possession of the dashboard camera film of his traffic stop (although he has seen the film),

(6) he does not have possession of "certain police documents and reports," and

(7) "some . . . witnesses or participants" are unknown to him.

With regard to White's first, fifth, sixth and seventh allegations, the Government has reported to the Court that it is providing White with "open file" discovery in this case. To the extent that White believes that the Government has withheld evidence or information that is was obligated to disclose, White should either file a <u>specific</u> discovery request or move *in limine* to bar introduction of the evidence at trial. With regard to White's third and fourth allegations, the Court finds that the Indictment satisfies the notice requirements to White.

10

Finally, with regard to White's second allegation, it is frivolous. The law regarding the composition of grand juries is well-established:

> The Constitution requires jury selection systems to draw their jurors from a fair cross-section of the community. This does not mean that every class or subclass or identifiable group must be represented on every jury list but does mean there must not be any systematic, intentional or negligent exclusion of persons or groups.

*United States v. Brickey*, 426 F.2d 680, 683 (8th Cir. 1970). Moreover it is clear that "a defendant has no right to demand that members of his race be included on the grand jury that indicts him." *Alexander v. Louisiana*, 405 U.S. 625, 628, 92 S.Ct. 1221, 1224 (1972). *See also United States v. Test*, 550 F.2d 577, 590 (1976) ("[A] defendant has no right to a grand . . . jury of any given demographic composition.").

## G. The Court has personal jurisdiction over White

White alleges that the Court cannot exercise personal jurisdiction over him, citing a 1778 treaty between the Confederated Indian Tribes and the United States. Setting aside the question (discussed above) regarding the lack of federal recognition of the Pembina Nation, it is clear that White subjected himself to the laws of the United States (and enforcement thereof) when he left the territory of the Pembina Nation and entered into the jurisdiction of the United States.

> [E]ven if the Court were to accept the defendant's assertion that he is a member of a sovereign nation, that fact would not relieve him of criminal liability for violations of United States law committed within the Court's jurisdiction. Any tribal sovereignty belonging to the Pembina Tribe simply "does not extend to shield [the defendant] from the legal consequences of [his] own private off-reservation activities."

*Stowbunenko-Saitschenko*, *supra*, 2007 WL 865392, op. at *2 (*quoting*, *in part*, *Richmond*, 431 F.Supp.2d at 1178).

11

### H. White's claims against unnamed court officials

White generically asserts that "court officials" have ignored or failed to honor the Constitution, treaties, and laws of the United States. White's allegations are too vague and illusory to provide the Court with even a starting point for legal analysis. To the extent that White has a specific allegation, he should raise it with the district court prior to or during any trial.

### I. White's request for injunctive relief

Finally, White improperly moves for civil injunctions. The case before the Court is a criminal proceeding. The Court will not entertain White's motion for the imposition of civil injunctions against federal, state and municipal officials in this criminal prosecution.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** White's MOTION TO SUPPRESS, DISMISS FOR FRAUD AND INJUNCTION TO CEASE AND DESIST filed June 18, 2008 (Doc. #24).

Counsel and the *pro se* defendant are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                              */s/ John T. Maughmer*
                                              **John T. Maughmer**
                                        **United States Magistrate Judge**